You can adjust that lectern if you want. The last time I adjusted this, Judge Bright told me I'm a big man and he's an old man and I need to speak up. Well, that always helps. May he proceed. Thank you, Your Honor. My name is David Smellick. I represent Deon Bailey. Mr. Bailey pled guilty to two lesser-included offenses of distribution of cocaine base in violation of 21 U.S.C. 841 Sub A Sub 1 and 841 B Sub 1 Sub C in the Northern District of Iowa before the Honorable Linda R. Reed. These were lesser-included offenses of distribution near Orange Park in Dubuque, Iowa, a violation of 21 U.S.C. 860 that was eliminated from his plea agreement pursuant to a plea agreement. With the court's permission, I would like to dedicate the majority of my time to defendant's pate challenge and the district court's failure to take up his competency sua sponte. In short, the court's dismissal of defendant's pro se requests for an evaluation coupled with his pronounced irrational behavior as demonstrated in numerous prolific rambling nonsensical pro se pleadings was a denial of defendant's due process right to a fair trial and a statutory violation of 18 U.S.C. 4241. Under pate and this court's ruling in day, the issue before the court wasn't whether the court abused its discretion to deem the defendant alert enough to plead guilty as the government's brief alleges. It was whether the court failed to order a constitutionally compelled hearing. It did so fail. All the court needed to be convinced of was reasonable cause to believe the defendant may be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The evidence of defendant's pronounced irrational behavior was substantial to trigger the court's duty to hold a bona fide hearing on competency. What detracts from that is the court said from her observations but also from his defense lawyer who said I didn't notice anything that he was incompetent. That's pretty strong evidence that the court observing it but also the lawyer saying that. Why isn't that enough to at least give substantial evidence to support the district judge's opinion not to have a hearing? Well, it does not controvert the evidence that is in the record that the defendant himself submitted in these pro se pleadings, but I will grant you that Mr. Sheets is a fine lawyer and that is what the court so found. The court said I'm not asking you, Mr. Bailey, whether or not you're satisfied with Mr. Sheets' services because I think he's not a fine lawyer. He is. But we are doctors of law. We are not doctors. In Pate, I believe it was Justice Clark who wrote because there was a similar argument advanced in that case. There was a jury trial in that case, I believe, that the colloquy or the interaction between the trial judge and the defendant appeared to show on its face on the surface that the defendant was mentally alert enough to participate in his defense. And I would assert that it did not square with his pro se pleadings as well as his pro se requests for a mental health evaluation before, I believe, during and after his plea taking. In fact, the defendant said, I just want a mental health evaluation and repeatedly had said, I believe, that his brain hurt and he just wanted to make sure he was making the right decision. And the court . . . Well, now, the court response was I don't have any evidence and you haven't presented any evidence. You don't have any medical evidence or psychologist or whatever other than you say your brain hurts and you make these comments, which I don't think she believed. And obviously, there's a credibility issue here. Is that an issue of failure of proof? You just can't come in and say, I want to hear it. Understood, Your Honor, but there is . . . I would assert respectfully that there is not a failure of proof based on the . . . after being told not to do it by, I believe, both Judge Scholes and Judge Reed, that he cannot file pro se pleadings without participating with his own lawyer, that the attorney is the one to file pleadings. He repeatedly filed these pleadings. If that is not substantial evidence of a failure to understand the nature and consequences of the proceedings against him, I don't know what is. I'll tell you, in my limited experience, this is not unique. Defendants do this . . . I don't know what the percentage is, but quite a few of them do exactly what happened here. Understood, Your Honor. What is unique is that the defendant . . . the public defender in this particular case moved to withdraw early, citing the defendant's failure to cooperate with his own defense. When the court relented and appointed substitute counsel, Mr. Sheets, these pro se pleadings denied he was the straw man of the construct, a nonsensical . . . a non sequitur. Demanded proof of the posting of a hazard bond. Requested that the court correct all public records with his new name, Anthony of the Bailey family, with the suffix added L. Bay. The district court itself in Docket 68 dismissed his requests to reveal conspiracies, deceptions, exploitations, his discussion of tribes. He had indicated that he was from the tribe of the Moabites and that Mr. Sheets was from the tribe of Benjamin. And that the two apparently . . . what I interpreted from that is that the two of them . . . their respective tribes had suffered a long time or a centuries old biblical feud. Counsel, I guess . . . I would agree with Judge Riley in coming from the district court, not that I've been there a long time, but that doesn't sound out of the ordinary to me. I mean, are you saying every time we receive a pro se pleading like that, the court should call into question the mental competency of . . . I mean, I will tell you like Judge Riley, I see those . . . I saw some this morning. Understood, Your Honor. What makes this unique is that the colloquy, the back and forth, there was a dichotomous choice that the defendant had to make in this particular case, whether to plead guilty and seek a . . . I believe is the way the court phrased that. We can do that. But then later said, well, look, the defendant had asked for a Bureau of Prisons programming or a mental health evaluation and that is not how I interpreted his request. I interpreted his request as being a request for a mental health evaluation to determine whether he was competent. So the plea, the prolific and nonsensical pleas plus the defendant's request for a mental health evaluation plus the court's failure to recognize those two things together and the dichotomous choice all put together . . . Your argument is that this should have demanded that the court allow your client to withdraw his guilty plea. Is that where you're going with this? Yes, Your Honor, but also to seek a mental health evaluation and immediately order a mental health competency hearing. And the trial court didn't do that. What's our standard review of the trial court's decision here? Thank you, Your Honor. We believe that it is de novo review because there's a constitutional issue. There's a mixed question of law and fact because . . . The constitutional due process or what? Yes, Your Honor, we believe the hearing was constitutionally compelled by my client's due process right to a fair trial. That's the sum and substance of your 65-page brief. Is that right? There are some other issues that I would like to address. The quantity calculation in this case was based extremely on a thin read. The defendant's unrepresented interrogation in the Dubuque County Jail with a drug task force officer where the defendant was trying to basically sell his services and get . . . And he repeatedly said, well, I'm worth thousands or I sell thousands of dollars. I believe he said he could sell $3,000. And the interrogator pressed him and said, really? Can you do that? And he kept downgrading the amount that he could sell. And he ultimately said he could sell to four customers on the street and he estimated that that would be $600 to $700 a week. And the court or the PSR wrote that he would do that every day and that that amounted to 840 . . . I see here I'm out of time . . . That that was 840 grams and we would argue that that was an exaggerated claim. Thank you. Thank you. Well, good morning, Mr. Boverjack. Good morning, Your Honor. Good morning, Your Honors. You may proceed. Thank you, Your Honor. Tim Boverjack from the United States Attorney's Office, Northern District of Iowa. Pleased to be here. The briefs in this case are quite thick and there are four issues, primary issues in the brief. The first, as was discussed at some length, whether the defendant was competent to plead guilty. Second, whether the district court had clearly erred in calculating the drug quantity. And then, two other sentencing issues, whether the district court erred in finding the defendant was a career offender, the complicated Mathis type issues. And then, whether the sentence was substantively unreasonable. The amount of the drug, that's an issue of fact, right? It is reviewed for clear error, Your Honor. And one of the other, I will also intend to focus on the competency issue unless there are any specific questions about sentencing. One of the things that we note in our brief is with respect to the sentencing issues is there's two levels of harmless error working against the defendant in this case. The first is that this is an unusual case where apart from the career offender finding, which usually drives the guidelines, here the defendant's quantity, if the court does not reverse for clear error on drug quantity, and the defendant's criminal history category are right at the same numbers. And so, the guideline range is the same. The second level of harmless error that the defendant, hurdle that the defendant has to overcome is, this is a case like the previous case where Judge Reed did indicate that if her guideline findings were wrong in any way, she would impose the exact same sentence using the discretion that she has afforded under 18 U.S.C. 3553A. And she gave very detailed reasons for that in this case. With respect to competency, it is important to focus on the legal standard. And that is, did the defendant understand the charges? Did the defendant therefore have the ability to consult with a lawyer, namely Mr. Sheets here? And did he have a rational and factual understanding of the proceedings? The cases teaches there are no bright line rules. But some of the things the court can look at are, did the defendant display a rational behavior? Did he have a demeanor indicating he didn't understand what was going on? And then also the court should take into account trial counsel's opinion at the plea taking. The danger here in the appellant's argument is that we conflate the fact that the defendant holds certain, apparently holds certain or espouses certain legal beliefs that no lawyer or judge in this courtroom would ever put in a pleading or in an order. And conflate those beliefs that he may have with the question, the narrow question of legal competency. Many people hold beliefs that are not true. And that does not mean they would not be competent to plead guilty or not. As Judge Rossiter indicated, you know, in the district court, these are not uncommon. And there are other things one can imagine. You know, one can imagine someone today believing the earth is flat or that if there is a Loch Ness monster. But that doesn't mean that when they're in a courtroom, they don't understand the proceedings and aren't competent to plead guilty. And the government was unable to find any case that held that all of these sovereign citizen type individuals are per se incompetent. Nor that people who may have suffered from depression, anxiety or bipolarism. Many defendants come to the court with mental health issues. How did it happen? I don't remember that Judge Reed found out that Mr. Sheets didn't see the incompetence. If there wasn't a hearing, did he just speak up in the courtroom or how did that come about? What happened here and in this case, there was right prior to when the trial was scheduled to commence. Actually, it was the day that was supposed to be of the trial. But the judge moved it one more day because the defendant indicated he wanted to plead guilty and he had given notice. There was a two-hour hearing and there is a transcript in the record on that date of a plea hearing. Eighty-one pages long. It went on for two hours. And at that hearing, as is common, the judge asked the defense attorney, Mr. Sheets, if he had any concerns about the defendant's competency. And Mr. Sheets, who as the court indicated when he was arguing here today, is quite experienced. And that's actually in the record when he moved to have Mr. Sheets removed. There is a record made that Mr. Sheets was chosen specially for this case due to his experience after the federal public defender had withdrawn. But when asked by the district court, Mr. Sheets said he had met with the defendant, quote, many, many, many times for long periods of time and never had concerns about his ability to understand the proceedings. It was Mr. Sheets' professional opinion that the defendant was, quote, scared, end quote. And that's about page 32 of scared. As many defendants are. And as the judge remarked at the plea hearing, it is a momentous occasion when you are going to plead guilty to two federal drug trafficking crimes that carry serious, serious penalties. In addition to Mr. Sheets, the court here indicated that in her opinion, spending two hours with this defendant, that he was competent and understood what was going on. That was a finding the court made. And the judge said at page 34 of the transcript, the defendant asked, quote, exceptionally good questions, end quote. This was not idle hyperbole by the district court judge. As we have outlined in our brief on pages 26 and 27, there were about 16 questions that the defendant asked during the course of this hearing before he ultimately pled guilty. Were there any prior convictions of this individual? Had he been up this road before? I've forgotten from the 25 briefs I've read for this week. Yes, Your Honor. Absolutely. And I have his pre-sentence report in front of me. That would be paragraphs 26 ongoing to paragraph 44 of the PSR. So we have about 18 prior convictions. He scored, as indicated before, basically at the career offender level, even if you take away the career offender doctrine. He was criminal history category 6. This was not his first rodeo. Had he pled to any of these priors, too? Had this been a... Had he ever gone up this road before? It appears so, although looking at it right in front of me, I don't see that the PSR specifically noted differences between whether there was a trial or a plea. When I was reviewing this last night, going through this transcript again, they really were, as the district court indicated, exceptionally good questions. He went so far as to ask about the sensing guidelines, whether he'd be at level 32. And the judge indicated, well, we don't know for certain. And then he asked, for example, he didn't use the phrase Rule 11C1C, but he said, words to the effect of, judge, it's my understanding you don't generally, it's not your practice to take binding plea agreements. I just wanted to make sure that's not an option. And she indicated, you're right on, and that's not going to be an option here. At the end of the day, the takeaway in the government's view is that defendant, this was a difficult individual, may have been difficult to deal with, may have held unorthodox views about jurisdiction, unpopular views, wrong views. But that doesn't necessarily translate into competency, especially when we have the three big things. We have Mr. Sheets's representation on the record. We have the judge's finding after an extensive hearing. And then we have the defendant's own words. He said here, I am guilty. Judge Beam, I believe you asked appellant's counsel whether he was also seeking reversal or withdrawal of the plea. He had moved to withdraw his plea in the district court. As I read the appellant's brief, we briefed that issue. But as I read the appellant's brief, it was simply whether the court should have had a competency hearing. The relief requested in the appellant's brief was a remand, not vacation of the conviction. Unless there are any particular questions about any of the remaining issues. Maybe it was all that paper I read. Thank you. Thank you. Mr. Smelik, have any time left? His time has expired, Your Honor. We'll give you a minute if you want to address anything. Thank you, Your Honor. With regard to exceptionally good questions, one of those questions that the government did not mention was whether it would be perjury to plead guilty if somebody else committed the crime. And whether or not the court had heard from someone named Junior, who later filed an affidavit that he had committed the offense, a gentleman by the name of Louis Altman Junior, which isn't exactly the issue that's before the court, but it certainly contributes. If it's a good question, then we also have to say that's a good question, whether or not it is perjury to plead guilty to something that you didn't commit. With regard to whether or not there's substantial evidence in the record and whether or not these are merely unorthodox views, by the time we get to the hearing on the motion to withdraw the guilty plea, the court now has the PSR, which has multiple diagnoses, multiple prescriptions. And in fact, the court thought it important enough to look up one of those medications on the Internet, citalopram, that is not a proxy for a medical evaluation or a competency hearing. Thank you, Your Honor. Okay, thank you. Thank you both for your arguments today. And thank you for coming to Omaha. And Mr. Bobachek, it's good to see you here in my last week. Thanks for coming over. And with that, we'll take it under advisement.